# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DARRELL WHYTE, | ) |
| Movant, | ) |
| v. | ) Case No. 3:16-cv-02622 |
| | ) Judge Aleta A. Trauger |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM

Movant Darrell Whyte, a prisoner in federal custody, brings this action pursuant to 28 U.S.C. § 2255 to set aside, vacate and correct an allegedly illegal sentence and Judgment imposed by this court in 2016. *See United States v. Whyte*, No. 3:13-cr-00211 (M.D. Tenn. April 20, 2016) (Judgment, Doc. No. 74); *id.* (May 3, 2016) (Am. Judgment, Doc. No. 77).[1] For the reasons set forth herein, the court finds that an evidentiary hearing is not required and that the movant is not entitled to relief.

## I. PROCEDURAL BACKGROUND

In October 2013, Whyte was charged in a two-count Indictment with being a previously convicted felon in possession of a firearm (Count One) and being a previously convicted felon in possession of ammunition (Count Two), both in violation of 18 U.S.C. §§ 922(g)(1) and 924. (Crim. Doc. No. 1.)

In January 2016, Whyte entered a guilty plea to Count One of the Indictment in accordance with the terms of a Plea Agreement under Rule 11(c)(1)(C) of the Federal Rules of

---

[1] References to the criminal case record will hereafter be designated as "Crim. Doc. No. __."

Criminal Procedure, pursuant to which the parties agreed to a below-guideline sentence of 96 months. (Crim. Doc. Nos. 67, 68.) Of relevance here, Whyte acknowledged in the Plea Agreement that he had prior state court convictions for: (1) vehicular homicide in 1998, for which he received an eight-year sentence; (2) possession of over .5 grams of cocaine with intent to distribute, for which he received an eight-year sentence, concurrent with that for vehicular homicide; (3) in 2003, possession of cocaine with intent to distribute, for which he received a five-year sentence; (4) also in the same 2003 case, two counts of sale of cocaine, for each of which he received four years, concurrent with the five-year sentence for possession with intent; (5) attempted aggravated child endangerment in 2010 (ten-year sentence); (6) evading arrest in 2010 case (two years); and (7) in the same 2010 case, possession of a firearm by a felon (two years). (Crim. Doc. 68 § 8, at 6.) The parties acknowledged that, pursuant to U.S.S.G. § 2K2.1(a)(2), which cross-references the definitions for "crime of violence" and "controlled substance offense" in § 4B1.2(a) and (b), Whyte's base offense level was 24. (Doc. No. 68 § 10(a)(i).)

In addition, the Plea Agreement included a waiver of the defendant's right to appeal any issue bearing on the determination of guilt or to challenge the agreed-upon sentence of 96 months. (Doc. No. 68 § 20.) He also waived his right to challenge the sentence in any collateral attack under 28 U.S.C. § 2255. (*Id.*)

At sentencing, the court expressly accepted the findings of the Presentence Report ("PSR") as its findings of fact on all issues and on the application of the Sentencing Guidelines. (Sentencing Tr., Crim. Doc. No. 85, at 2.) The PSR specifically referenced only Whyte's previous drug convictions in 1998 and 2003 as the predicate felonies—"controlled substance offenses" under § 4B1.2(b)—upon which the application of U.S.S.G. § 2K2.1(a)(2) was based.

(Crim. Doc. No. 79 § 18.) Although the guideline range was 100 to 120 months, the court accepted the parties' agreement and sentenced Whyte to 96 months. (Doc. Nos. 74, 77.) Whyte initially pursued an appeal, but his appeal was dismissed pursuant to his motion for voluntary dismissal. (*See* Crim. Doc. No. 82.)

## II. THE CURRENT MOTION

Whyte filed his *pro se* Motion to Vacate and supporting Memorandum in this court on October 3, 2016. (Doc. Nos. 1, 2.) Because he articulated a claim under *Johnson v. United States*, 135 S. Ct. 2551 (2015), the court appointed counsel and directed the filing of a supplemental pleading. (Doc. No. 3.) After substantial delay, counsel filed an Amended Motion (Doc. No. 16), and the government filed a Response in opposition (Doc. No. 23). Whyte thereafter submitted two supplemental memoranda and a number of letters addressed to the court. (Doc. Nos. 25–28.)

In his original Motion, Whyte argued that, in light of the Supreme Court's finding in *Johnson* that the so-called residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague, "the identical residual clause" contained in U.S.S.G. § 4B1.2 is also unconstitutionally vague, as a result of which he is entitled to resentencing. (Doc. No. 2, at 2.) Whyte's argument focuses primarily on his claim that his prior convictions for reckless child endangerment and vehicular homicide could only count as violent felonies under the residual clause of § 4B1.2(a)(2). (*See* Doc. No. 2, at 4–6.) He also asserts that his "minor drug crimes" fail to qualify as controlled substance offenses for purposes of the guideline. (*Id.* at 6–7.) He does not present any argument in support of the latter claim, but he "reserve[d] the right to brief that issue at length" if the government disputed his position. (*Id.* at 7.)

The Amended Motion specifically incorporates by reference the claims raised in the *pro*

*se* Motion (*see* Doc. No. 16, at 1 n.1) but focuses on Whyte's prior drug-related convictions. Rather than relying on *Johnson* per se, Whyte's counsel argues that (1) the Supreme Court's recent decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), which he claims was decided while Whyte's criminal case was still pending,[2] dictates a conclusion that neither of the two prior Tennessee drug felonies qualifies as a controlled substance offense; and (2) Whyte's trial counsel was constitutionally ineffective for failing to challenge his client's base offense level during plea and sentencing negotiations, and Whyte was prejudiced by that failure because, "[h]ad [trial counsel] pursued this objection, there is a reasonable probability that Mr. Whyte's sentence would have been reduced considerably." (Doc. No. 16, at 6.)

The government contends in response that (1) trial counsel's performance was not deficient, because (a) *Mathis* has no bearing on this case, as the Sixth Circuit, both before and after *Mathis*, has held that convictions under Tenn. Code Ann. § 39-17-417, the statute under which Whyte was convicted, categorically qualify as controlled substance offenses under the relevant guideline provisions; and (b) Whyte was not prejudiced by counsel's purported failure to contest the guideline computation in his case; (2) Whyte is not entitled to resentencing on any other grounds, because he waived the ability to challenge his sentence or bring a collateral attack on any other ground than ineffective assistance of counsel; and (3) in any event, the *Mathis* claim is not cognizable on collateral review. (Doc. No. 23.)

Counsel did not file a reply brief, but Whyte submitted a letter to the court objecting that his appointed counsel had abandoned the claims he raised in his *pro se* Motion and arguing that, at his arraignment hearing, the drug charges were never mentioned as the basis for the

---

[2] *Mathis* was actually decided on June 23, 2016, shortly after Whyte's criminal conviction had become final and several months before he filed his § 2255 motion in October 2016.

application of the ACCA. (Doc. No. 26.) He insists that the arguments raised by counsel should never have been argued until and unless his sentence was vacated and he was resentenced. He also refiled his original Memorandum (Doc. No. 27) and submitted another letter in which he insists that, at his arraignment, the government "disavowed reliance on his convictions of 'controlled substance' offense[s] to form the basis for base level enhancements." (Doc. No. 28.) Whyte believes that this constituted a waiver by the government of its ability to rely on his prior drug-related convictions to calculate his base offense level under the sentencing guidelines.

### III. STANDARD OF REVIEW

To be entitled to relief, a prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion, a movant "must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)). Non-constitutional errors are generally outside the scope of § 2255 relief. *United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000). A movant can prevail on a § 2255 motion alleging non-constitutional error only by establishing a "fundamental defect which inherently results in a complete miscarriage of justice, or an error so egregious that it amounts to a violation of due process." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (internal quotation marks and additional citation omitted)).

A § 2255 motion is not a substitute for a direct appeal. Consequently, as a general rule,

any claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the movant shows "(1) 'cause' excusing [the] procedural default, and (2) 'actual prejudice' resulting from the errors," *United States v. Frady*, 456 U.S. 152, 168 (1982) (citations omitted), or demonstrates that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). A claim of ineffective assistance of counsel is not subject to the procedural-default rule. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective-assistance claim may be raised in a collateral proceeding under § 2255 regardless of whether the movant could have raised the claim on direct appeal. *Id.*

A prisoner who files a motion under § 2255 challenging a federal conviction is entitled to "a prompt hearing," at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. The hearing is mandatory, "unless 'the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (quoting 28 U.S.C. § 2255(b)). "If the record includes a factual dispute, the district court must hold a hearing to determine the truth of the [movant's] claims." *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) (quotation marks and citation omitted). However, "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Upon consideration of the original and amended motions, the government's response, Whyte's *pro se* replies, and the underlying record as a whole, the court finds that a hearing is not required.

## IV. ANALYSIS

The grounds for relief raised in the supplemental pleading filed by counsel on behalf of Whyte are premised on the ineffective assistance of counsel for failing to raise a *Mathis* argument or otherwise to contest the computation of Whyte's base offense level under the Sentencing Guidelines. The court finds that Whyte is not entitled to relief on either basis. Moreover, Whyte's claims as raised in his *pro se* filings are without merit.

### A. Issues Raised in Original Motion

As an initial matter, it is clear that, contrary to Whyte's fear, appointed counsel did not waive the arguments raised in Whyte's *pro se* Motion and the Amended Motion supplemented the arguments raised by Whyte; it did not supersede or override the original filing. Regardless, the claims raised by Whyte *pro se* are without merit, even assuming that they were not waived by a failure to raise them on direct appeal or as a result of the terms of the Plea Agreement.

In particular, Whyte's argument that the residual clause contained in U.S.S.G. § 4B1.2 is unconstitutionally vague, based on the Supreme Court's holding in *Johnson* that the residual clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutional, has been foreclosed by the Supreme Court's recent holding that the sentencing guidelines "are not subject to a vagueness challenge under the Due Process Clause" and that "[t]he residual clause in § 4B1.2(a)(2) therefore is not void for vagueness." *Beckles v. United States*, 137 S. Ct. 886, 892 (2017).

Regardless, the residual clause was not applied in Whyte's case. His base offense level was determined with reference to U.S.S.G. § 2K2.1(a)(2), which prescribes a base offense level of 24 "if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense," as those terms are defined by U.S.S.G. § 4B1.2. His sentence was based on the two prior controlled

substance offenses (defined by § 4B1.2(b)), not prior crimes of violence (defined in § 4B1.2(a)). His argument that his prior convictions for reckless child endangerment and vehicular homicide could only count as violent felonies under the residual clause of § 4B1.2(a)(2) is therefore simply beside the point. His base offense level was not based on those prior convictions.

Whyte's claim that the government waived its ability to base his sentence on the prior drug offenses rather than the reckless child endangerment and vehicular homicide convictions is simply incorrect. Whyte cites to his arraignment, but the transcript of that proceeding reveals that there was no mention of which specific prior offenses would affect his sentence. (*See generally* Crim. Doc. No. 86.) Moreover, nothing the government said at that juncture would have constituted a waiver or barred it from later deciding to depend on different offenses. At sentencing, the court specifically adopted the findings of the PSR. The PSR listed all of Whyte's prior convictions (PSR, Crim. Doc. No. 79 Pt. B), but it premised Whyte's base offense level under § 2K2.1 on two prior drug convictions. (*See id.* Pt. A § 18, at 8 (listing the two prior drug convictions and stating: "Since the defendant committed the instant offense subsequent to sustaining two felony convictions of controlled substance offenses, the Base Offense Level is 24. U.S.S.G. § 2K2.1(a)(2).").)

Whyte's *pro se* arguments, even assuming they are not waived, are without merit.

### B. Amended Motion

The court understands counsel to argue that Whyte's trial counsel's performance was constitutionally ineffective because he did not anticipate *Mathis*, which was issued on June 23, 2016, and because he did not argue, even under the case law as it existed pre-*Mathis*, that a conviction under Tenn. Code Ann. § 39-17-417(a)(4) is not categorically a controlled substance offense for purposes of U.S.S.G. § 2K2.1.

To be entitled to relief under § 2255 based on a claim of ineffective assistance of counsel, the movant must establish "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In judging an attorney's conduct, the court must consider all of the circumstances and facts of the particular case, *id.* at 690, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Prejudice requires a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A defendant has the burden of making both showings; otherwise, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

In *Mathis*, the Court addressed "a Circuit split over whether ACCA's general rule—that a defendant's crime of conviction can count as a predicate only if its elements match those of a generic offense—gives way when a statute happens to list various means by which a defendant can satisfy an element." 136 S. Ct. at 2251. It answered the question in the negative, holding that courts cannot apply the "modified categorical approach," which allows inspection of certain underlying documents, when the elements of the statute itself sweep more broadly than the generic offense. *Id.* It also made it clear that its holding did not cover new ground; rather, it attempted to clarify previous holdings:

> As just noted, the elements of Mathis's crime of conviction (Iowa burglary) cover a greater swath of conduct than the elements of the relevant ACCA offense (generic burglary). Under our precedents, that undisputed disparity resolves this case. We have often held, and in no uncertain terms, that a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense.

*Id.* (internal citation omitted).

As the Sixth Circuit has recently explained, *Mathis* attempted to provide guideposts for distinguishing between statutes deemed "divisible"—that is, whose structure permits application of the modified categorical approach—and those that are not and, therefore, require strict application of the categorical approach. *See Banks v. United States*, No. 18-5510, 2019 WL 2149658, at *3 (6th Cir. May 15, 2019) ("This [modified categorical] approach gets triggered by 'so-called "divisible statute[s]."' A divisible statute 'list[s] elements in the alternative, and thereby define[s] multiple crimes.' . . . Some statutes, however, will list only separate means . . . to commit a single crime. . . . For these statutes, courts revert to the categorical approach by asking if the entire offense—including the least forceful 'means' of violating it—falls within the elements clause." (quoting *Mathis*, 136 S. Ct. at 2249, and *Descamps v. United States*, 570 U.S. 254, 257 (2013); other citations omitted)).

Citing *Mathis*, Whyte raises a somewhat tortured argument that his prior drug offenses are not categorically controlled substances offenses, based on a comparison between the language of the Tennessee statute, Tenn. Code Ann. § 39-17-417, and that of the federal sentencing guideline defining "controlled substance offense," U.S.S.G. § 4B1.2(b). Whyte presumes that the four subparts of § 39-17-417(a) are divisible. The Sixth Circuit likewise has concluded, post-*Mathis*, that the statute is divisible. *See United States v. Goldston*, 906 F.3d 390, 394 (6th Cir. 2018) (finding that § 39-17-417(a) "constitutes a 'divisible statute' in that it sets out one or more of the offense elements in the alternative").

Whyte argues that subsection (a)(4), under which he apparently concedes that he was convicted, is not divisible. That subsection criminalizes possession of a controlled substance "with intent to manufacture, deliver or sell" it. "Delivery" is defined by statute as "the actual, constructive, or attempted transfer from one person to another of a controlled substance." Tenn.

Code Ann. § 39-17-402(a)(6). Counsel argues that the "least objectionable conduct" under this statute also encompasses "administering" a controlled substance (defined as "the direct application of a controlled substance," *id.* at § 402(a)(1)), which, he claims, falls within the scope of the Tennessee statute's definition of "delivery"[3] but does not fall within the scope of the federal definition of a "controlled substance offense":

> Thus, under Tennessee law, the "least objectionable conduct" contemplated under § 39-17-417(a)(4) is to possess with the intent to "administer" a controlled substance. This plainly does not suffice to meet the definition of a "controlled substance offense" under U.S.S.G. § 4B1.2(b) (the guideline provision that informs the heightened base offense level in § 2K2.1). That definition requires an offense to prohibit "the manufacture, import, export, distribution, or dispensing of a controlled substance," or "the possession of a controlled substance . . . with intent to manufacture, import, export, distribute, or dispense." This definition is considerably narrower than a Tennessee conviction, because the career offender definition does not encompass "administering" a drug or "possessing with the intent to administer" a drug. Accordingly, Mr. Whyte's offense was categorically not a "controlled substance offense" under U.S.S.G. § 2K2.1(a)(2), and he was sentenced in violation of the law.

(Doc. No. 16, at 4–5.)

The court is not persuaded by this argument. In particular, Whyte has not shown that an arrest and conviction for possession with intent to *administer* in a form that does not also constitute *dispensing* would realistically occur or ever has occurred in Tennessee. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) ("[T]here must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" (quoting *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)); *accord United States v. White*, 837 F.3d 1225, 1230 (11th Cir. 2016) ("Defendant argues that . . . the conduct made criminal by § 13A-12-213(a)(1) falls outside of the ACCA's definition of a serious

---

[3] This argument is based on the definition of "distribute" as "to deliver other than by administering or dispensing a controlled substance," which implies that "administering" is a form of "delivery." Tenn. Code Ann. § 39-17-402(9).

drug offense because, in theory, a person could violate the statute by . . . possessing it with intent to administer or dispense it, rather than with intent to distribute it. Defendant, however, . . . does not cite any authority to suggest that § 13A-12-213(a)(1) has ever been applied in this hypothetical situation."); *United States v. Teran-Salas*, 767 F.3d 453, 459–60 (5th Cir. 2014) (where the prior conviction at issue was for possession of cocaine with intent to deliver, acknowledging that Texas law "allows for the theoretical possibility that a defendant can be convicted for administering in a way that is not dispensing under the federal guidelines, but holding that the defendant failed to "establish a realistic probability that Texas would prosecute his crime under an 'administering' theory in a way that does not also constitute either 'dispensing' or 'distributing' under the federal sentencing guidelines"); *United States v. Burgos-Ortega*, 777 F.3d 1047, 1054–55 (9th Cir. 2015) ("[The defendant] has not shown the realistic probability of prosecution for administering a drug required to establish that [the state criminal statute] is categorically overbroad. . . . The fact that [the defendant] has not identified such a case suggests that there is no realistic probability of prosecution . . . for administering rather than delivering an illegal drug.").

This argument was also rejected by the Sixth Circuit in a now-vacated panel opinion, *United States v. Havis*, 907 F.3d 439 (6th Cir. 2018), *reh'g en banc granted, opinion vacated*, 921 F.3d 628 (6th Cir. 2019), *and on reh'g en banc*, No. 17-5772, 2019 WL 2376070 (6th Cir. June 6, 2019). While the decision has been vacated, the defendant did not seek rehearing *en banc*, and the *en banc* court did not address, the "administering" argument. *See United States v. Havis*, 2019 WL 2376070, at *1 n.2. In the vacated opinion, a panel of the court recognized that, under Tennessee law, "delivery" encompasses the act of administering a drug, such that someone theoretically could be convicted of delivering a drug by administering it in Tennessee in a

manner that would not constitute "dispensing" under the Guidelines. However, the court concluded, consistently with the other circuit decisions cited above, that the defendant did not show that such a conviction "could realistically occur." *Id.* at 447. The court stated:

> First, the plain text of Tennessee's statute does not command [the defendant's] interpretation. [The defendant] would have us infer that delivery under Tennessee law includes any type of administering a drug. He suggests that we draw this inference from Tennessee's definition of "distribute," which is "to deliver *other than by administering* or dispensing a controlled substance." Tenn. Code. Ann. § 39-17-402(9) (emphasis added). So, [the defendant] reasons, if one can deliver drugs other than by administering them (at least in the context of distributing), delivery must be the broader genus of administering's species. But [the defendant] does not find much support for this argument in Tennessee's separate definitions of "deliver" and "administer." If every act of administering was a delivery, one would expect some sort of reference to administering in Tennessee's definition of "deliver" or some reference to delivery in Tennessee's separate definition of "administer." There is none. *Id.* § 39-17-402(1), (6). And even if delivery includes some administering, [the defendant] also fails to explain why we would not read Tennessee's definition of "deliver" to include administering drugs only to the extent specified in Tennessee's definition of "dispense" (which happens to match that under federal law). *Id.* § 39-17-402(6)–(7); 21 U.S.C. § 802(10).
>
> Second, [the defendant] cites no cases showing that Tennessee actually charges delivery based on administering a drug in a manner that would not constitute dispensing it. And here again, several other circuits have rejected similar challenges on the same grounds. Thus, Havis's final argument is unavailing.

*Id.* (most internal citations omitted). The court finds the Sixth Circuit's treatment of an argument virtually identical to Whyte's persuasive, even though not binding. Whyte, likewise, has not shown that a conviction for possession with intent to "administer" could realistically occur or ever has occurred in Tennessee.[4]

---

[4] In the *en banc Havis* decision, the Sixth Circuit held that Tenn. Code Ann. § 39-17-417, in particular subsection (a)(3), is not categorically a controlled substance offense under U.S.S.G. § 4B1.2(b) for purposes of computing a defendant's base offense level under § 2K2.1(a). The decision was premised, first, upon the recognition that "delivery" of drugs, under Tennessee law, encompassed "the actual, constructive, or *attempted* transfer from one person to another of a controlled substance." *Havis*, 2019 WL 2376070, at *1 (quoting Tenn. Code Ann. § 39-17-402(6)). Second, the court concluded that the definition of "delivery" under U.S.S.G. § 4B1.2(b) does not include attempt crimes. *Id.* at *3. In Whyte's case, however, the movant concedes that he was convicted under § 39-17-417(a)(4) for possession with intent to manufacture, deliver, or

In short, neither *Mathis* nor the *en banc Havis* decision affects the resolution of this case. Trial counsel was not ineffective for failing to anticipate either or for failing to object to the characterization of Whyte's prior drug-convictions as controlled substance offenses for purposes of U.S.S.G. §§ 4B1.2(b) and 2K2.1(a)(2). Even if counsel arguably could or should have raised these arguments, they are without merit and would not have had any likelihood of reducing Whyte's sentence.

## IV. CONCLUSION

For the reasons set forth herein, Whyte's § 2255 motion, as amended, will be denied.

However, in light of the swiftly changing landscape in the area of sentencing, the court finds that the applicant has made a substantial showing that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see also* 28 U.S.C. § 2253(c)(2). The court will therefore issue a certificate of appealability.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

---

sell a controlled substance. As set forth above, this subpart is divisible from the remainder of the statute. Tennessee law does not appear to define "possession" to encompass "attempt to possess," and it would make little sense to charge a defendant with attempt to possess with intent to distribute. Thus, the *en banc Havis* decision does not appear to have any effect on Whyte's case.